A. SHEPARD *against* G. SHEPARD.

Though a deed from a husband directly to his wife, is void in law, yet where the conveyance of the husband is for the purpose of making a suitable provision for the wife, as giving her a deed of certain lands, parcel of his estate, during her widowhood, equity will lend its aid to enforce the provision ; especially, where the rights of creditors do not interfere, and where the wife had, by an ante-nuptial contract, released all right of dower to arise under the marriage, on the express engagement of the husband, that she should be endowed of all lands acquired by them, during their cohabitation.

Where a husband conveyed land to his son, for a nominal sum, on his covenanting to pay an annuity to his mother during her widowhood: *Held*, that the wife was entitled to her action on the covenant so made by the son to her husband, for her benefit ; and that a release of the covenant to the son, by the husband, in his life-time, was fraudulent and void, as she had the sole beneficial interest in the covenant, and was alone entitled, in equity, to release it.

·THE bill stated, that the plaintiff was the widow of *February* 8th. *Hazel Shepard*, deceased. That before their marriage, in *May*, 1806, *H. S.*, being seised of fifty acres of land, in *Pittstown*, and part of lot 8, in *Hoosick's patent*, in *Rensselaer* county, executed a deed, dated *April* 12th, 1806, reciting their intended marriage, and that if they should purchase any real estate during their marriage, the plaintiff should have a right of dower in the same during her widowhood, and he released to her dower therein ; " but no other right of dower to any other real or personal estate he then had, or might have, by means of selling any real or personal estate he then had, and buying and paying therewith." The plaintiff, on the same day, executed a deed to *H. S.*, reciting their intended marriage, and releasing to him all right of dower in his estate, real or personal, by virtue of the intended marriage. That after their marriage, on the 26th of *December*, 1808, *H. S.* executed a

1823.

SHEPARD
v.
SHEPARD.

deed to the plaintiff, (she being his wife,) in consideration of natural affection, and to make provision for her when a widow, of a lot of land described, to hold during her widowhood. And, afterwards, on the 6th of *January*, 1817, *H. S.*, in consideration of natural affection, executed the deed to the defendant, his son, releasing to him the same land he had before released to the plaintiff. That on the same day the defendant, by deed, in consideration of 1000 dollars, released to *H. S.* 48 acres of the land described, during his life; and the defendant covenanted with *H. S.* that he would pay annually to the plaintiff, during her widowhood, the sum of 60 dollars, or at his election, the sum of 400 dollars, in two equal annual payments, to commence from the day of the death of *H. S.*, if the defendant should so elect; and the payment of the annuity, or of the 400 dollars, was to be on condition that the plaintiff should release to the defendant all right, as widow of *H. S.*, or by virtue of any deed, or otherwise, to the said estate of *H. S.*; and if she refused so to do, the covenants of the defendant were to be void. The land described in the deed of the 26th of *December*, 1808, and that of the 6th of *January*, 1817, was the same land. *H. S.* died on the 25th of *April*, 1819, and the plaintiff remains his widow, without any provision for her support. The defendant is in possession of the land described in the last mentioned deeds; and the plaintiff having brought an action against him, upon the deed from *H. S.* to her, the defendant set up in defence, that the deed was void in law. The defendant never made his election to pay the plaintiff 400 dollars. The plaintiff had offered to release to the defendant all her right to the estate of *H. S.*, mentioned in the deed, provided the defendant would pay to her the annuity, which he refused to do. No land was purchased by *H. S.* and the plaintiff during their marriage. The defendant had the title deeds, and refused to assign to the plaintiff her dower. *Prayer,* that the defendant be decreed to release

to the plaintiff all his right to the land described in the deed of the 26th of *December*, 1808, for her life, or widowhood, to take effect as of the 28th of *April*, 1819, and to deliver the possession thereof, and account for the rents and profits from the death of *H. S.*; or, if the plaintiff should so elect, that the defendant be decreed to pay to her the annuity during her widowhood, upon her releasing to him all her right in the land; and that he secure such annuity by a mortgage on the land, or otherwise; or if that cannot be done, that the defendant be decreed to assign to the plaintiff her dower, and account for the mesne profits, &c.

The defendant, in his answer, admitted the deeds as stated in the bill; and that the deeds between *H. S.* and the plaintiff, before their marriage, were in his possession. He insisted, that the deed of the 26th of *December*, 1808, from *H. S.* to the plaintiff, was void. That the covenants of the defendant in favour of the plaintiff, were without consideration. That on the 11th of *October*, 1817, *H. S.* being indebted to him, on various accounts, *H. S.*, in consideration that the defendant would discharge him from those demands, agreed to discharge the covenants, and mutual releases were accordingly executed. He admitted that he had made no election to pay the plaintiff 400 dollars, or the annuity, and insisted that he was not bound to make an election; that the yearly value of the lands is not 60 dollars. He admitted that he had refused to assign to the plaintiff her dower, and submitted that her claim was matter of law, and triable at law, and not in Chancery. He alleged, that the consideration of the deed of *H. S.* to him, was 25 dollars, which he paid, and the life-estate was conveyed to *H. S.* in the premises.

The cause was heard on the bill and answer.

*J. Paine*, for the plaintiff.

*W. Raleigh*, for the defendant.

1823.

SHEPARD
v.
SHEPARD.

THE CHANCELLOR. The plaintiff, upon the facts arising out of the bill and answer, claims the assistance of the Court, (1.) to make effectual, according to the terms of it, the deed to her from her husband, *Hazel Shepherd*, of the 26th of *December*, 1808 ; or, if that deed cannot be enforced as against the defendant, that then, (2.) the defendant be decreed to pay to her the annuity of 60 dollars, according to the terms of his covenant made to her husband, on the 6th of *January*, 1817 ; or, (3.) that her dower in the real estate, whereof her husband was seised, and which is now claimed by the defendant, be duly assigned to her, and that an account be also rendered to her of the rents and profits, from her husband's death.

A deed from a husband to his wife, during coverture, is void at law.

1. The deed from *H. S.* to the plaintiff, was undoubtedly void in law, for the husband cannot make a grant or conveyance directly to his wife, during coverture. ( *Co. Litt.* 3 *a.*) And in equity, the Courts have frequently refused to lend assistance to such a deed, or to any agreement between them. Thus, in *Stoit* v. *Ayloff*, (1 *Ch. Rep.* 33.) the husband promised to pay his wife 100 pounds: they separated, and she filed her bill for that sum. But the Court would not relieve the plaintiff, " because the debt was sixteen years old, and the promise made by a husband to a wife, which the Court conceived to be utterly void in law." Again, in *Moyse* v. *Gyles*, (2 *Vern.* 385. *Prec. in Ch.* 124.) the husband made a grant or assignment of his interest in a church lease, to his wife : she brought a bill, after his death, to have the defective grant supplied, and the Court held the grant to be void in law, and dismissed the bill, as the grant was voluntary and without consideration. So, in *Beard* v. *Beard*, (3 *Atk.* 72.) the husband, by deed poll, gave to his wife all his *substance* which he then had, or might thereafter have. Lord *Hardwicke* considered the deed poll to be so far effectual, as to be a revocation of a will, by which the testator had

given all his estate to his brother; yet that it could not take effect as a grant or deed of gift to the wife, " because the law will not permit a man to make a grant or convey-ance to the wife, in his lifetime, neither will this Court suffer the wife to have the whole of the husband's estate, while he is living, for it is not in the nature of a *provision,* which is all the wife is entitled to."

It is to be observed, that none of these cases were de-termined strictly and entirely upon the incapacity of the husband to convey to the wife, according to the rule of law; and they do not preclude the assertion of a right, in a Court of equity, under certain circumstances, to assist such a conveyance. The Court relied upon the staleness of the demand in the first case, and upon the want of con-sideration in the second, and upon the extravagance of the gift in the third, as also constituting grounds for the de-cree; and it is pretty apparent, that if the grant in each case had been no more than a suitable and meritorious *provision* for the wife, the Court would have been inclined to assist it. In *Slanning* v. *Style,* (3 *P. Wms.* 334.) Lord *Talbot* said, that Courts of equity have taken notice of, and allowed feme coverts to have, separate interests by their husbands' agreement, especially where the rights of creditors did not interfere. And in *More* v. *Ellis,* (*Bunb.* 205.) articles of agreement, executed between husband and wife, were held binding without the intervention of trustees. So, in *Lucas* v. *Lucas,* (1 *Atk.* 270.) Lord *Hardwicke* admitted, that in Chancery, gifts between hus-band and wife have often been supported, though at law the property is not allowed to pass; and he referred to the case of Mrs. *H.* and to that of Lady *Cowper.* And in the very modern case of Lady *Arundel* v. *Phipps,* (10 *Ves.* 146. 149.) Lord *Eldon* held, that a husband and wife, after marriage, could contract, for a *bona fide* and valua-ble consideration, for a transfer of property from the hus-band to the wife, or to trustees for her.

1823.

SHEPARD
v.
SHEPARD.

But a suitable *provision,* by deed from a husband to his wife, will be supported in equity.

The consideration for the deed to the wife, in the case before me, was very meritorious. It was " natural affection, and to make sure a maintenance for the said *Anna S.*, wife and consort of *H. S.*, in case she should survive him." She had been induced, prior to the marriage, to release to *H. S.* all right and claim of dower to arise under the intended marriage, and the consideration for this release, was an engagement on his part, that she should have dower in any real estate to be purchased by them " by their prudence and industry during the cohabitation." But no estate was purchased by them by those means, and, according to the literal terms of those deeds, she was barred of her dower without any substitute. The deed to the wife, of certain lands, being part and parcel of his estate, for and during her widowhood, was, therefore, no more than a just and suitable provision, and one that a Court of equity can enforce consistently with the doctrine of the cases. The defendant does not stand in the light of a creditor, or of a purchaser for a valuable consideration without notice, and we have none of the difficulties before us, which such a character might create. He does not deny notice of the existence of the deed to the plaintiff, when he received the deed of the same lands from *H. S.;* and he does not pretend that he gave any thing more than the nominal consideration of 25 dollars, though the consideration of 1000 dollars was inserted in the deed. The fact that he did, on the day of the date of that deed, reconvey the lands to *H. S.*, his father, for life, and did annex thereto a covenant to pay to the plaintiff an annuity of 60 dollars, during her widowhood, (and which he now says is more than the annual value of the land,) is decisive evidence that he took the land of his father, *with knowledge* of the equitable claim of the plaintiff, and with an engagement on his part, to give her a reasonable compensation in extinguishment of that claim.

. I conclude, accordingly, that the deed from the hus-

band to the wife, may and ought, in this case, to be aided and enforced by this Court. This would seem to be the most safe and effectual relief to her, and it is one that her husband intended, before the alienation of his affections. The defendant would deprive her not only of her rights under this deed, but of all right and title to dower, by reason of her ante-nuptial release, and also of all compensation, in lieu of dower, under his covenants, which were made to the husband, and by him subsequently released.

2. But if the deed of 1808 was out of the question, I should then have no difficulty in declaring that the defendant was bound to pay her the stipulated annuity, or the gross sum of 400 dollars in lieu of it, on her releasing all right and title, as wife of *H. S.*, to his estate, as described in the deed to the defendant. The relationship between the husband and wife, was sufficient to entitle the plaintiff to her action upon the covenant to her husband, and which was made for her benefit. The consideration enured from the husband, and arose from the obligations of that relation; and the release of the defendant from his covenants by *H. S.* was fraudulent and void, as respected the plaintiff, who had the sole beneficial interest in the covenants, and who was alone entitled in equity to release them. In *Dutton* v. *Poole*, (2 *Lev.* 210. 1 *Vent.* 318. *T. Jones*, 103.) the defendant, in consideration that his father, at his request, would not cut and sell certain timber growing, promised to pay the plaintiff, his sister, 1000 pounds, and it was held, after solemn argument, that an action of *assumpsit* lay at law, in the name and on behalf of the sister, and the judgment was affirmed on error to the Exchequer chamber. It was said, that the beneficial interest was in her, and she was the party who might have released. Lord *Mansfield*, in *Martyn* v. *Hind*, (*Cowp.* 443. *Doug.* 142.) said, that it was difficult to conceive how a doubt could have been entertained about this case of *Dutton* v. *Poole*. The same doctrine appears in the more

early case of *Starkey* v. *Mill*, (*Sty.* 196.) and it has had the sanction also of Mr. Justice *Buller*, in *Marchington* v. *Vernon*. (1 *Bos. & Pul.* 101. in *notis.*)(a)   But it is quite unnecessary to dwell longer on this second point.   The plaintiff is entitled to the use and enjoyment of the land contained in the deed, for and during her widowhood; and as the deed is void at law, and can only be sustained in a Court of equity, it becomes necessary that the remedy should be afforded here, and it forms a just and proper subject of equitable jurisdiction.

I shall, therefore, direct a reference to ascertain the net value of the rents and profits, from the death of the husband on the 25th of *April*, 1819, to the date of the report; and that the defendant, within thirty days after notice of this decree, deliver up possession to the plaintiff, of the premises contained in the deed to her, and included in the deed from *H. S.* to the defendant; and that the defendant, and all persons under him, be enjoined from disturbing the plaintiff, after she shall have obtained possession of the land, and been put into the pernancy of the future rents and profits, and in the enjoyment thereof, to her own use and benefit, during her widowhood; and that he pay to her the rents and profits so to be ascertained, within thirty days after the report made and confirmed, together with her costs of this suit, to be taxed, or that the plaintiff have execution therefor.

Decree accordingly.

(a) See *Schermerhorn* v. *Vanderheyden*, 1 *Johns. Rep.* 139.   S. P.