(5 App. Div. 354.)

### BUCHANAN v. TILDEN.

(Supreme Court, Appellate Division, First Department. May 22, 1896.)

ACTION—WHO MAY SUE—PERSONS NOT PARTIES TO CONTRACT.

A wife cannot sue on a promise made to her husband to pay her a sum of money in consideration of services to be rendered by the husband to the promisor, where the wife was not a party to the agreement; such promise having been made, not with a view of discharging the obligation of the husband to support his wife, but merely to provide her with a separate estate. Ingraham, J., dissenting. Lawrence v. Fox, 20 N. Y. 268, distinguished.

Appeal from circuit court, New York county.

Action by Adelaide E. T. Buchanan against George H. Tilden. From a judgment entered on a verdict directed by the court in favor

of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

The complaint alleges:

"That on or about the 19th day of February, 1887, an agreement was entered into by and between the defendant and Robert D. Buchanan, the husband of this plaintiff, whereby, in consideration of services theretofore rendered and thereafter to be rendered by the said Robert D. Buchanan and by Robert G. Dun, and other good and valuable considerations moving from the said Robert D. Buchanan and the said Robert G. Dun to the said defendant, the said defendant promised and agreed with the said Robert D. Buchanan that in the event of the success of certain proceedings then pending, or any which might thereafter be taken, to practically set aside the thirty-fifth section, article, or clause of the last will and testament of the late Samuel J. Tilden, the uncle of the said defendant, the said defendant would pay to this plaintiff, or to her order, the sum of fifty thousand dollars. That as evidence of the last-mentioned agreement the said defendant wrote and signed, and delivered to one Robert G. Dun, the following letter:

"'New York, February 19th, 1887.

"'Robert G. Dun, Esq., No. 314 B'way, N. Y. City—My Dear Sir: It is understood between Mr. R. D. Buchanan and myself that in the event of the success of the proceedings now pending, or any which may be taken, to practically set aside the thirty-fifth section of the will of my late uncle, Samuel J. Tilden, in view of the assistance looking to that end which has been and may be rendered by Mr. Buchanan, as well as yourself, that I will and do hereby become responsible for the payment to Mrs. Adelaide E. Buchanan, or her order, of the sum of fifty thousand dollars. * * *

"'Yours, very respectfully,　　　　　　　　　　　G. H. Tilden.'"

Upon the trial it was shown that, after the signing and delivery of this letter, Mr. Buchanan got from Dun, and delivered to the defendant, $10,000, and afterwards got other moneys for the defendant,—in all, over $20,000,—for the purposes of the will contest, on the faith of the promise made by defendant to benefit Mrs. Buchanan, which advances were secured by notes to Dun, and which, with interest, after the successful termination of the will contest, were paid. As the result of the contest of the will of Samuel J. Tilden, the defendant and his brothers and sisters were enriched to the extent of several millions of dollars; and the value to be attached to the pecuniary assistance which Buchanan had procured for him is evidenced by letters, in one of which the defendant says, "We shall ever be grateful for the assistance you have given us, and, if we succeed in getting our money, we shall have to thank you for our success." The plaintiff was the adopted daughter of Moses Y., a brother of Samuel J. Tilden, who died before him; and, not being of the blood of the latter, the plaintiff, presumably, could not take at his death, and could only hope, as a result of a successful contest of the will, to benefit by such an agreement as was made by defendant. Dun was the brother-in-law and uncle of plaintiff's husband, and, as shown, was interested by ties of relationship, as well as friendship, in the plaintiff, and on her account, principally, made the money advances; the testimony showing that the promise made by defendant to Dun was that the plaintiff should share alike with himself and his brothers and sisters in the estate of Samuel J. Tilden, in the event of success in the then pending litigation over the will, and that it was on this promise that Dun loaned the money to defendant, and also that it was to secure benefit to the plaintiff that her husband rendered the services which he concededly did in obtaining the moneys from Dun. The defendant offered no evidence upon the trial, and upon the showing made the court directed a verdict for the plaintiff.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, O'BRIEN, and INGRAHAM, JJ.

Delos McCurdy, for appellant.

Louis S. Phillips, for respondent.

O'BRIEN, J.   The court is impressed with the strong equity of plaintiff's case, as exhibited, not only by the oral evidence, and the letters of the defendant, but by the very terms of the agreement sued upon. But, conceding this, and, further, that there was a contract between Dun and the defendant, and between Buchanan and the defendant, upon a sufficient consideration, for the benefit of the plaintiff, the question remains whether she can recover upon such a contract. The respondent, recognizing the difficulty of sustaining such right upon the contract made between Dun and defendant, rests her case upon that made between the defendant and Buchanan, to pay the plaintiff $50,000 in consideration of Buchanan's services to defendant. In opposition the appellant contended below, as he does here, that the only contract shown was one between Dun and the defendant, relating to loans of money made by Dun to the latter, which were to be, and were, actually repaid to Dun, and not to plaintiff, who, it is insisted, had no interest in the contract claimed to have been made for her benefit; that no consideration was given by plaintiff for any promise made by the defendant; that the letter which was the basis of the action was addressed to Dun, and therefore showed a contract with him, and not with the plaintiff's husband; and that Dun advanced the only substantial consideration for the alleged promise, and that this has been repaid. There is much force in this construction of the contract between the parties; but, if we take the stronger and more favorable position advanced by the respondent, it remains to be considered, assuming a contract between plaintiff's husband and defendant for her benefit, whether, upon this theory, she would be entitled to recover. As thus presented, the question is, can a wife enforce payment in her own name, where the husband renders valuable services, and stipulates with the person to whom the same are rendered that compensation therefor shall be made, not to him, but to her?

It is insisted that the promise having been made to the husband of the plaintiff, who owed to her the obligation of support and maintenance (an obligation both legal and moral), she, as the designated beneficiary, is entitled to enforce the contract expressly made for her benefit, and on her behalf. In support of this proposition our attention is called to many English cases, and many cases in this state, beginning with that of Lawrence v. Fox, 20 N. Y. 268, wherein it was held that an action lies on a promise made by the defendant upon valid consideration, to a third person, for the benefit of the plaintiff, although the plaintiff was not privy to the consideration. In Vrooman v. Turner, 69 N. Y. 284, it is said:

"The courts are not inclined to extend the doctrine of Lawrence v. Fox to cases not clearly within the principle of that decision. Judges have differed as to the principle upon which Lawrence v. Fox and kindred cases rest, but, in every case in which an action has been sustained, there has been a debt or duty owing by the promisee to the party claiming to sue upon the promise. Whether the decisions rest upon the doctrine of agency, the promisee being regarded as the agent for the third party, who, by bringing his action, adopts his acts, or upon the doctrine of a trust, the promisor being regarded as having received money or other thing for the third party, is not material. In

either case there must be a legal right, founded upon some obligation of the promisee, in the third party, to adopt and claim the promise as made for his benefit."

This and similar cases that might be cited, in which Lawrence v. Fox has been distinguished, will show that that case has been sharply criticised, and its scope materially limited, and that the tendency of the decisions is to adhere to the rule at common law—

"That one cannot acquire rights under a contract to which he is not a party, and hence no right to enforce a contract is given to a person not a party to it, or an assignee of such party." Lawson, Cont. § 113.

There have been, however, certain exceptions to this general rule recognized in some of the cases, beginning with the English case of Dutton v. Pool, 1 Vent. 318, upon which the learned trial judge relied for his action. This case is the foundation for a distinct class of cases where promises have been made to a father, or other near relative, for the benefit of a child or other dependent relative, in which the person for whose benefit the promise was made has been permitted to maintain an action for the breach of it. The nearness of the relation between the promisee and him for whose benefit the promise was made has been sometimes assigned as the reason for these decisions, and while the principle upon which they have been placed has been variously stated, and in some instances questioned, both in England and America, the decisions have been followed, and must therefore be regarded as settled law. In this state the cases in which reference has been made to Dutton v. Pool are Schemerhorn v. Vanderheyden, 1 Johns. 140; Cumberland v. Codrington, 3 Johns. Ch. 229; Barker v. Bucklin, 2 Denio, 45; Bleeker v. Bingham, 3 Paige, 246; King v. Whitely, 10 Paige, 465; Lawrence v. Fox, 20 N. Y. 268; Burr v. Beers, 24 N. Y. 178; Knowles v. Erwin, 43 Hun, 150. In all of these where the promise of the third person has been enforced, it will be found that, as in Dutton v. Pool, the promisee, and the person for whose benefit the promise was made, stood in the relation of parent and child, and in Todd v. Weber, 95 N. Y. 181, the person to be benefited was an adopted child; and they proceeded upon the fact that the promisor had obtained a consideration from the father, for which he undertook to discharge the duty that such father owed to the child,—of making suitable provision for the child by way of maintenance and support, or by the advancement of a portion,—and it was recognized that the cases were to be supported upon the principle of the duty or obligation that the father owed to the child, and which, for a valuable consideration, the promisor agreed to perform. We do not regard these cases, therefore, as authority for the broad proposition that a near relationship between the promisee and the person who is to be benefited by the contract would give such person a right of action. But it is insisted that the duty which a father owes his child is no greater or higher than that which a husband owes his wife, and it was assumed by the learned trial judge that the duty and obligation of the husband to the wife is, as a consideration, quite equal to the duty and obligation of the father to the child. But if we concede that the obligation of the father is to support the child, and that the

duty of the husband is to support the wife; that upon the death of the father the child will be entitled to a portion of his estate; and that upon the death of the husband the wife would be entitled to a portion of her husband's estate,—the fact still remains that this was not a contract looking towards the discharge of the obligation which the husband owed to support the wife, and must therefore be supported, if at all, upon the mere relation of husband and wife. We can find no authority for holding that a promise made to the husband by a third person for the benefit of his wife, which was not intended, to provide for her support, or to discharge the husband's duty in that regard, could be enforced by the wife. Nor do we think that there is a disposition to extend the principle of some of the cases relating to father and child to any other relationship. An examination of these cases will show that in almost all of them the obligation and duty of support and maintenance rested upon, or was assumed by, the person to whom the promise was made, and that the promisor, for a consideration passing from the promisee, undertook to discharge that duty or obligation. Here the arrangement was, not to provide a fund for the support and maintenance of the wife, but to furnish her with an independent sum; and the absence of any duty or obligation on the husband's part to provide such eliminates the essential element or principle which is the basis of nearly all the cases where actions on behalf of a child have been allowed upon promises made by a third party to the father. As we have said, however, we do not think there is a disposition to regard as authority any of the cases in which the mere relationship between the parties has been held a sufficient consideration moving from the party for whose benefit the promise was made, as against the promisor. On the contrary, the latest case in the court of appeals (Durnherr v. Rau, 135 N. Y. 219, 32 N. E. 49), while not directly in point, is, in its controlling principles, adverse to the plaintiff's right to maintain this action. There, D., the plaintiff's husband, executed to defendant a deed of certain premises, with covenant of warranty. He had previously executed mortgages thereon, in which plaintiff joined. The grantee covenanted to pay all incumbrances "by mortgage or otherwise," and the deed declared that the grantor's wife reserved her right of dower in the premises. The mortgage was subsequently foreclosed, and the premises sold. In an action for breach of the covenant, plaintiff claimed as damages the value of her inchoate right of dower cut off by the foreclosure. In determining adversely to her right to maintain such an action, the court, in speaking of the force of a covenant by the grantee to pay off the mortgages and save the wife's right of dower, says:

"But the wife was not a party to the mortgages, and in no way bound to pay them. She had an interest that they should be paid without resort to the land, so that her inchoate right of dower might be freed therefrom. The husband, however, owed her no duty, enforceable in law or equity, to pay the mortgages to relieve her dower. The most that can be claimed is that the mortgages having, as is assumed, been executed to secure his debts, and he having procured the wife to join in them and pledge her right for their payment, he owed her a moral duty to pay the mortgages, and thereby restore her to her original situation. But, according to our decisions, no legal or

equitable obligation, of which the law can take cognizance, was created in: favor of the wife, against the husband or his property, by these circumstances. * * * There is lacking in this case the essential relation of debtor and creditor between the grantor and a third person seeking to enforce such a covenant, or such a relation as makes the performance of the covenant at the instance of such third person a satisfaction of some legal or equitable duty owing by the grantor to such person, which must exist, according to the cases, in order to entitle a stranger to the covenant to enforce it. It is not sufficient that the performance of the covenant may benefit a third person. It must have been entered into for his benefit, or at least such benefit must be the direct result of performance, and so within the contemplation of the parties, and in addition the grantor must have a legal interest that the covenant be performed in favor of the party claiming performance. The application of the doctrine of Lawrence v. Fox to this case would extend it much further than hitherto, and this cannot be permitted, in view of the repeated declarations of the court that it should be confined to its original limits."

While, therefore, in view of the strong equities in plaintiff's favor,. we regret that the action is not sustainable in her behalf, this is,. to some extent, lessened by the view we entertain,—that the husband may have the right in his own name, and on his own behalf,. to secure some of the recompense to which he is entitled, and which,. under the contract, he intended to secure for the benefit of his wife..

The judgment must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and WILLIAMS, J., concur.

RUMSEY, J. (concurring). The contract upon which this action. was brought is expressed in a letter signed by the defendant, and addressed to Mr. Robert G. Dun. So much of it as is material to the case is as follows:

"It is understood between Mr. .R. D. Buchanan and myself that, in the event of the success of the proceedings now pending, or which may be taken, to. practically set aside the thirty-fifth section of the will of my late uncle,. Samuel J. Tilden, in view of the assistance looking to that end which has been and may be rendered by Mr. Buchanan, as well as by yourself, that I. will, and hereby do, become responsible for the payment to Mrs. Adelaide E. Buchanan, or her order, of the sum of fifty thousand dollars."

The circumstances under which that contract was made were that an action was then pending to set aside the thirty-fifth section of the will of Samuel J. Tilden. The defendant was the principal party having the management and control of that action, and he needed money to enable him to proceed with it. This money could only be got from Dun through the agency of Buchanan, who was the plaintiff's husband. Mrs. Buchanan, the plaintiff, was the adopted daughter of one of Mr. Tilden's brothers. The result of the action, whatever it might be, would have been, of itself, of no importance to her,. and all that she could get out of the estate, whatever might be the result of it, was the sum of money which was agreed to be paid. by this letter. It is said, and it must be assumed, that after the writing of this letter Mr. Buchanan rendered some service; and it is conceded that Mr. Dun advanced to the defendant some $20,000,. which was to be repaid to him, with interest. The action was brought to compel the payment by the defendant of the $50,000 to Mrs. Bu--

chanan, and the only question presented is whether, under all the circumstances, Mrs. Buchanan had a cause of action arising out of the contract which is stated above. It is claimed by the plaintiff that her right to sue stands upon the principle enunciated by the court of appeals in Lawrence v. Fox, 20 N. Y. 268, which is that, where a promise is made to one party for the benefit of another, the person for whose benefit the promise is made has an action against the promisor. The facts of that case were that the promisee loaned Fox a certain sum of money; the promisee also loaned to Lawrence an equal sum of money; and, in consideration that the promisee should loan the money to Fox, Fox agreed to repay it to Lawrence. In the last analysis, the ground upon which the right to maintain the action was put was that there was a novation. But such a ground necessarily involves the proposition that there is some duty owing from the promisee to the person for whose benefit the promise is made. The existence of that ground has since been recognized in all the cases, and, unless some such duty has been shown to exist which the law recognizes, the person for whose benefit the contract is made is not permitted to maintain an action. The rule which has finally been laid down upon that subject is as follows: Where a promise is made by one person to another, for the benefit of a third, in the absence of any liability of the promisee to such third person, he cannot enforce the promise. Townsend v. Rackham, 143 N. Y. 516, 38 N. E. 731. In that case, Judge Finch, referring to Lawrence v. Fox, and subsequent cases upon which the right of a third person to sue have been based, says:

"In none of them is there an intimation that the action can be sustained by the third person in the absence of any liability in his favor due, or to grow due, from the one to whom the promise was made."

Judge Allen lays down the rule that, to enable the third party to bring an action on such a promise, there must be some obligation or duty owing from the promisee to such third party, which would give him a legal or equitable claim to the benefit of the promise, or an equivalent from him personally. Vrooman v. Turner, 69 N. Y. 280, 284.

An authority precisely in point in this case is Durnherr v. Rau, 135 N. Y. 219, 32 N. E. 49. In that case, Emanuel Durnherr, the husband of the plaintiff, had deeded to the defendant certain lands, in which deed the wife did not join. The defendant, the grantee, covenanted in the deed to pay all the incumbrances on the premises by mortgage or otherwise, and it was expressly declared in the deed that the wife reserved her right of dower in the premises. The defendant, upon being applied to, refused to pay the amount of the wife's right of dower, and permitted the mortgages in which she had joined to be foreclosed, thus cutting off her dower. An action was brought for the damages, and the court held that there was no right of action in the plaintiff, because there was, on the part of the husband, no legal or equitable obligation, of which the law could take cognizance, in favor of the wife, to protect her right of dower, for the reason that he owed her no duty, enforceable in law or in

equity, to relieve her dower from the mortgages. The rule there is that, to permit the third party to enforce such a promise, the promisee must have a legal interest that the covenant be performed in favor of the party claiming the performance. It is quite clear that the right of dower of the wife, even before the death of the husband, was, if not an estate, certainly an incumbrance on the premises conveyed to Rau, and was strictly within the terms of this conveyance to pay incumbrances on the premises by mortgage or otherwise. Youngs v. Carter, 10 Hun, 194; Mills v. Van Voorhies, 20 N. Y. 412. In Youngs v. Carter, supra, it was held that there was a moral duty on the husband to do nothing by way of depriving his wife of that right. If, therefore, a moral obligation on the part of the promisee is sufficient to permit the enforcement of such a contract, it would seem that the decision in the case of Durnherr v. Rau should have been different from what it was. But it is quite clear that the obligation, as expressed in all the cases cited above, must be a legal or equitable one. Such is the express holding of the court in Durnherr v. Rau, and in the other cases which have been cited. The courts have expressly declared that Lawrence v. Fox will not be extended to any case which do not come precisely within the rules above stated. Pardee v. Treat, 82 N. Y. 385. It has been claimed that this case comes within this rule because, Buchanan being the husband of the plaintiff, there was a moral obligation resting upon him to support and maintain his wife, and that for that reason this promise can be enforced. It is quite true that the husband is under an obligation to support his wife, and it may be that any contract which he makes with a third party, having for its object the carrying out of that obligation, would be enforced by the courts. But certainly the liability of the promisor in such cases will go no further than the extent of the obligation of the promisee. There is no obligation, legal or equitable, here, on the part of the husband towards the wife, to entitle her to the performance of this contract. This was not a contract for her support, nor was it one to do anything which, under any circumstances, the husband could be compelled to do. It was simply an obligation on the part of the defendant to pay to the plaintiff a sum of money, as an independent fortune, for her separate estate, in case the husband rendered some service to him. So far as the plaintiff and her husband were concerned, as to this contract, there were no legal relations between them. They occupied no different relation from that of any other man and woman, because the husband was under no obligation, in any way, to obtain for his wife a separate estate, or to do anything for the benefit of her separate estate; and this was simply a contract on the part of the defendant to give her a separate estate, and not to do anything which the husband was called upon to do by way of her support, or to relieve him in any way from the duty which the law put upon him to support his wife. That duty, so far as appears, he was performing, and there was therefore no legal or equitable claim which the plaintiff had towards him, which he had not performed, that could serve as a basis for the novation which must lie at the foundation of this cause of action. A man is surely under

no obligation to do any act to create a separate estate for his wife, however strong his obligation may be to support her.

There is no case of authority in this state, where this question has been raised, in which it has been held that the moral obligation under which a husband lies to support his wife is sufficient to enable her to maintain an action upon any such contract as this. It has been shown by Mr. Justice O'BRIEN that the rule has not been extended in this state so that a contract resting upon that obligation will be enforced. The cases cited by the respondent do not establish the existence of any such rule. They are based upon the case of Dutton v. Poole, 2 Lev. 210. Of that case it may be said, in the first place, that it has been repudiated by the English courts by which it was decided (Tweddle v. Atkinson, 101 E. C. L. 393), and it is no longer authority in that country. The case of Shepard v. Shepard, 7 Johns. Ch. 57, does not sustain the respondent's contention. The plaintiff in that case was the widow of Hazel Shepard. Before her marriage she had made a contract with her husband by which he assigned 50 acres of land, out of which her dower should be taken, and she released her dower in all other lands owned by her intended husband, and he covenanted that she should have her dower in that particular land. After the marriage, Hazel Shepard conveyed to her another lot of land, to make provision for her support when she should become a widow. The defendant was the son of Hazel Shepard. After the execution by the husband to the plaintiff of the second conveyance, he released the same premises to his son, which before he had conveyed to the plaintiff, and received from his son, the defendant, a deed by which the son released to the father the same premises during his life, and covenanted with the father that he would pay to the plaintiff, during her widowhood, $60 annually, or $400 in a lump sum, upon condition that she would release to the defendant all her right as widow of Hazel Shepard, or by virtue of any deed made by him to her, to the lands of Hazel Shepard. Hazel Shepard died, leaving the plaintiff, his widow, without any means of support except the covenant of the son, or her right to the dower in the 50 acres of land. She offered to release her right of dower to the son, and demanded payment of the annuity, or the sum of $400, and, upon that being refused, brought her action in the court of chancery to compel the defendant, her son, to pay her the money he had agreed to pay, or to have her dower assigned to her out of the lands of her husband, pursuant to his covenant. The chancellor found as a fact that the son took the release from his father without any consideration, and with notice of the deed previously made to the plaintiff after marriage; and he held that, although that deed was void in law, it was good in equity, and gave to the plaintiff a sufficient interest in the premises to permit her to maintain an action upon the covenant made for her benefit with her husband as a consideration for the transfer and the release of her dower. That was the point on which the case turned; but the chancellor, having decided the case on that ground, then goes on to say that, without referring to the deed made after her marriage, the relationship and obligation of the husband, and the fact that the covenant was made by

the son to the father for her benefit, were sufficient to enable her to maintain the action, because the release of the defendant from his covenant by Hazel Shepard was fraudulent and void as against her. There was on the part of the husband, in that case, an express obligation, arising out of his antenuptial contract, that his wife should have dower different from and additional to that arising from the marital relation, which clearly was sufficient to support the action, within the case of Lawrence v. Fox, as limited by the later cases; and therefore the case might be supported on the second ground stated by the chancellor, within the facts as they appeared, but it was not decided upon any such principle, which was not necessary to be considered. It is noticeable that, while that case has been frequently followed, it has always been upon the first point decided, and never upon the last dictum. See Hunt v. Johnson, 44 N. Y. 27, and other cases. A careful examination of the cases will show that since Lawrence v. Fox has come to be carefully examined, and its limitations clearly understood and expressed, no contract of the nature of the one enforced there has been permitted to be enforced by the party for whose benefit the action was brought, unless he could show that there was some enforceable legal or equitable obligation due, or to become due, to him from the promisee in the contract upon which he based his action. This condition of affairs clearly did not exist here, and for that reason this judgment should be reversed.

VAN BRUNT, P. J., and WILLIAMS and O'BRIEN, JJ., concur.

INGRAHAM, J. (dissenting). The respondent states the question submitted for decision as follows:

"Where a husband renders valuable services, and stipulates with the person to whom the same are rendered that compensation therefor shall be made, not to him, but to his wife, is the wife entitled to enforce payment?"

This, with the addition that the wife did not join in the agreement, and that there was no promise made directly to her, is an accurate statement of the question presented. The letter which contained the evidence of the promise is one written to Robert G. Dun by the defendant, in which the defendant says:

"It is understood between Mr. R. D. Buchanan and myself that in the event of the success of the proceedings now pending, or any which may be taken, to practically set aside the thirty-fifth section of the will of my late uncle, Samuel J. Tilden, in view of the assistance looking to that end which has been and may be rendered by Mr. Buchanan, as well as by yourself, that I will, and hereby do, become responsible for the payment to Mrs. Adelaide E. Buchanan, or her order, of the sum of fifty thousand dollars."

The services that Buchanan rendered to the defendant were in procuring Dun to loan to the defendant certain sums of money to be used in the litigation then pending to set aside the thirty-fifth section of the will of Samuel J. Tilden; the defendant being one of the next of kin of the said Tilden, and being entitled to a share in his estate in case this clause of the will was held void. This letter was written in pursuance of a verbal agreement made between the

defendant and Buchanan, by which the defendant, having asked Buchanan to induce Dun to make him further advances, said that he had to have some more money, and had to have it right away, and, in order to get the money and have it right away, he, on his own personal behalf,—having nothing to do with his brothers or sisters, in any sense,—would obligate himself personally to pay plaintiff $50,000; and to evidence that undertsanding this letter was written. This letter was delivered to Dun, and Dun subsequently advanced to the defendant over $10,000, which advances were secured by promissory notes of the defendant, with interest, and they have since been repaid to Dun. Plaintiff, as I understand, concedes that she is not entitled to recover on account of any promise having been made by Tilden to Dun as a consideration of this loan of money, but rests her right to recover upon the services which Buchanan rendered to the defendant in procuring from Dun the advance of this money; the value of such service being fixed by the agreement between Buchanan and defendant at this sum of $50,000, and the defendant promising with Buchanan that he would pay that sum to plaintiff, Buchanan's wife. As before stated, the wife was not a party to the contract. There is no evidence that she had any knowledge of it at the time it was made, and, as between her and the defendant, there was no consideration for the agreement, and no promise was made with her. Dun himself swears that he loaned this money, induced by a statement that Tilden made to him (Dun),—"that, if he was successful in breaking this will, that Addie Tilden [the plaintiff] would share and share alike with all the rest of the heirs; that was the intention"; that "it was his [the defendant's] saying that Addie Tilden would come in, share and share alike, with all the rest of the heirs, if he succeeded in breaking the will;  *  *  * and it was subsequent to that conversation that he [defendant] wrote this letter." The witness says that he cannot remember distinctly whether he talked with Buchanan about it or not, but that Buchanan first broached the subject to him of loaning this money to the defendant. The services that Buchanan rendered seem to have been his going to Dun and telling him that if he (Dun) advanced the money, and if the will was broken, Mrs. Buchanan, the plaintiff, would come in, share and share alike, with the rest of them, and, upon the faith of that promise, getting from Dun these various sums of money.

The right of the plaintiff to sue upon such a promise, made to her husband upon a consideration furnished by the husband, must depend upon the existence of a debt or duty owing by the promisee (the husband) to the party claiming to sue upon the promise (the wife). "To give a third party, who may derive a benefit from the performance of the promise, an action, there must be—First, an intent by the promisee to secure some benefit to the third party; and, second, some privity between the two,—the promisee and the party to be benefited,—and some obligation or duty owing from the former to the latter which would give him a legal or equitable claim to the benefit of the promise, or an equivalent from him personally. It is true, there need be no privity between the promisor and the party claim-

ing the benefit of the undertaking, neither is it necessary that the latter should be privy to the consideration of the promise, but it does not follow that a mere volunteer can avail himself of it. A legal obligation or duty of the promisee to him will so connect him with the transaction as to be a substitute for any privity with the promisor, or the consideration of the promise; the obligation of the promisee furnishing an evidence of the intent of the latter to benefit him, and creating a privity by substitution with the promisor. A mere stranger cannot intervene, and claim by action the benefit of a contract between other parties. There must be either a new consideration, or some prior right or claim against one of the contracting parties, by which he has a legal interest in the performance of the agreement." Vrooman v. Turner, 69 N. Y. 283. In that case King v. Whitely, 10 Paige, 465, and the cases that have followed it, were held not to be overruled by Lawrence v. Fox. It is not claimed in this case that there was any enforceable debt or obligation existing in favor of the plaintiff against the promisee, which, within the rule thus established, would entitle the plaintiff to maintain the action. The plaintiff, however, relies upon a series of cases in which the principle has been established that where a parent has made a contract with a third party, by which such third party is to pay a sum of money to his child, the child can enforce that agreement at law. These cases have generally proceeded upon the theory that the agreement was one by which the parent was making a distribution of his estate and property, and that where he gave to one child a certain portion of his property, upon the promise of that child to pay to his other child or children a certain proportion of it, the other child or children could enforce that agreement. This principle seems to have been first discussed in the case of Dutton v. Poole, 2 Lev. 210, decided in the time of Charles II. There the father of the plaintiff's wife, being seised of certain lands, was paid to cut £1,000 worth of timber to raise a portion for his daughter, the plaintiff; and the defendant, who was the heir at law of the father, promised the father that he would pay the daughter £1,000. It was held that an action brought by the daughter against the son after the death of the father would lie. Several cases have followed that decision, sustaining the right of the plaintiff to enforce the agreement upon the ground that there was a duty on the part of the parent to support the child, and that a contract made with a third party, by which such third party became obligated to pay to the child a sum of money for that purpose, could be enforced by the child, the duty owing by the parent being sufficient to give him a legal or equitable claim to the benefit of the promise. That a parent was under such an obligation to a child being thus conceded, and being sufficient to entitle the child to enforce the promise made by the parent for its benefit, the question is whether or not the husband and wife stand in the same relation to each other, or, in other words, whether the husband is under such an obligation to his wife to support her as would give her a legal right or equitable claim to the benefit of a promise made by the husband for her. Upon principle, it seems to me that this should be answered in the affirmative. The existence

of a legal obligation of the husband to support his wife is certainly as binding as that of a parent to support a child. The husband is liable for the necessities furnished to the wife, in case he refuses to provide a proper support for her; and, while living together, the husband is liable for the supplies purchased by the wife in his name for the support of the household. Upon divorce or separation the court has power to decree a proper support for the wife, and upon the death of the husband the wife is entitled to dower in his real estate. The law therefore recognizes this obligation of the husband to provide, both during coverture and after coverture, for the wife a reasonable support, and will enforce the obligation existing upon the husband. Certainly the moral obligation of a husband to support his wife is as strong as that of a parent to support his child, and we have the great authority of Chancellor Kent in favor of this right. Thus, in the case of Shepard v. Shepard, 7 Johns. Ch. 61, where the plaintiff conveyed land to his son for a nominal consideration, and the son (the defendant) covenanted with the husband that he would pay an annuity to the plaintiff (the wife) during her widowhood, of the sum of $60, or, at his election, the sum of $400 in two equal annual payments, to commence from the day of the death of the husband, the chancellor said:

"The relation between the husband and wife was sufficient to entitle the plaintiff to her action upon the covenant to her husband, and which was made for her benefit. The consideration inured from the husband, and arose from the obligations of that relation."

This case also holds that the natural affection of a husband for his wife, and the desire to make a sure maintenance for the wife in case she should survive the husband, is a meritorious consideration for a deed from the husband to the wife, so as to justify a court of equity in sustaining, and giving effect to, the deed made directly between the husband and wife. And this case was cited with approval in Hunt v. Johnson, 44 N. Y. 33; thus establishing the principle that the obligation of a husband to support his wife is sufficient to constitute a valuable consideration in a transaction between them, which a court of equity will enforce, notwithstanding it is void at law. And in the case of Todd v. Weber, 95 N. Y. 181, it was held that a promise made by the father of an illegitimate child to the child's relatives, that if they would support and educate the child they would get back what money they had spent, because he intended to do well for her in his will, so that "them that do well by her will be well paid," was a contract upon which the child could sue, as it was made for her benefit, as his child; and the court sustained an action to recover from the executors of the father the amount that the child's relatives had paid out for her support and education. The case of Durnherr v. Rau, 135 N. Y. 219, 32 N. E. 49, does not apply. There was no agreement in that case by which the defendant promised to pay to the wife any sum of money due him, but a simple declaration in a deed that the wife of the husband, who was the plaintiff, reserved her right of dower in certain premises that the husband conveyed to the defendant. That right of dower was lost by a foreclosure of mortgages upon the property,

which were superior to the wife's right of dower; and the court held that the covenant reserving the right of dower was simply as to the right of dower in the land conveyed, which was the land subject to the mortgage, and that no obligation existed between the husband and the wife, by which the husband was bound to pay off the mortgages so that her dower should be superior to them. Consequently no right of the wife existed to call upon the grantee of the deed to perform any obligation in her favor that the husband was not bound to perform. Here an entirely different question is presented. Services were rendered by the plaintiff's husband. For the rendition of these services the defendant agreed to pay to the plaintiff a sum of money. Whatever right the plaintiff had to recover from the defendant the value of his services to the defendant, he intended should vest in his wife; and that intention was expressed by the promise that the defendant made, by which the value of the services rendered was liquidated, and the defendant promised that he would pay it to the wife. The intent, therefore, was clear to vest the wife with this demand that existed in favor of the husband, as against the defendant. And the duty owing from the husband to the wife was sufficient to give her a legal claim to the benefit of the promise. I think, therefore, that this judgment is right, and should be affirmed, with costs.