INGRAHAM, J.
(dissenting).—This action is brought to-recover the damages sustained by the plaintiff in consequence of the refusal of Munroe & Co., of Paris, to accept or pay a bill at 90 days from date, drawn by the plaintiff, for $300, under' a letter of credit dated Movember 26, 1892, whereby the defendants, John Munroe & Co., certified that they had opened a credit with Munroe & Co., of Paris, in favor of the plaintiff, for 15,000 francs or £600, a bill of £600 having been drawn by the plaintiff upon Munroe & Ob., of Paris, acceptance and payment thereof having been refused, as the credit had been cancelled by the defendants prior to the drawing of the bill. This credit was issued to one Carston Boe, and by him delivered to the plaintiff: There was no consideration paid by Boe or the plaintiff to the defendants for the credit, and it was obtained by Boe upon representations which it is. not disputed would, as between Boe and the defendants, have- *979 given the defendants the right to cancel the credit. Upon the first trial the complaint was dismissed on the ground that it did not state facts sufficient to constitute a cause of action; and on an appeal to the general term of the supreme court of this department the judgment entered on that dismissal was reversed, and a new trial ordered. 84 Hun, 600. Upon the new trial the court submitted to the jury but one question, and that was whether or not the evidence of the plaintiff as to an interview that he had with one of the defendants prior to the acceptance of the letter of credit by the plaintiff was correct, or whether the evidence of one of the defendants as to that interview was correct; the court holding as a matter of law that, if the jury believed the plaintiff’s evidence as to this interview, the plaintiff was entitled to a verdict, the court charging the jury as follows:
“ How, that is the whole case, and all there is in it on the proofs as they are now before the court, and it is for you to say which of these parties you think are entitled to credit. If you find that Munroe’s version of this is right, the defendants would be entitled to a clean verdict. If you find that the Avitnesses for the plaintiff have presented it in the proper and reliable form, then the plaintiff would be entitled to verdict in the sum of $3,527.28.”
Upon the trial, therefore, the right of recovery was based solely upon the effect to be given to the conversation Avhich took place between the plaintiff and Mr. Munroe, one of the defendants. And the principle upon Avhich plaintiff claims that the statements made by defendant Munroe at that interview established a cause of action in favor of the plaintiff was that of estoppel, it being claimed that, in consequence of representations made by Mr. Munroe to the plaintiff, the defendants are estopped from denying that the letter of credit constituted a valid and existing obligation that Munroe & Co., of Paris, Avould accept the drafts drawn under the letter of credit, and that the defendants are liable for the refusal of Munroe & Co., of Paris, to accept such draft. Upon the former appeal to the general term three opinions Avere Avritten, one by Mr. Justice O’Brien in favor of a neAv trial, the presiding justice concurring in the result of the opinion of Mr. Justice O’Brien, and Mr. Justice Follett dissenting. In the opinion of Mr. Justice O’Brien the legal effect of a letter of credit was considered, and his conclusion is:
“That unless the complaint sIioavs that the defendants agreed for a valuable consideration that the draft would be accepted, or expressly in Avriting agreed to so accept it, or unless the plaintiff, upon the faith of such agreement to accept, parted Avith something of Avalué to Boe, from Avhom he received the letter of credit; then no cause of action is stated. In the latter, alternative the complaint is sustainable upon the theory of an estoppel, Avhich, from its nature, requires the support of a consideration. In other Avords, unless there is a part *980 ing with value, it is difficult, if not impossible, in any given case to create an estoppel. * * * In other words, the defendants having, upon the application of Boe,- extended to the latter a credit available in favor of the plaintiff, which the plaintiff received, but which, before taking, he inquired about from the. defendants as to its Availability according to its terms, and, after assurances such as were here given, it having been then received by the plaintiff for value, we think that, irrespective of the question whether or not the defendants received any consideration from Boe therefor, the plaintiff, as against the defendants, is entitled to recover.”
The presiding justice concurred in the result of this opinion, but dissented from the definition given to a letter of credit, and places his concurrence upon the following ground:
“ Prior to its acceptance the plaintiff made inquiry of the defendants, and was assured by them that it had been duly issued, and was available for the full amount thereof, in the manner provided by the terms thereof. The defendants, having made this representation upon which the plaintiff Accepted the letter of credit for value, are estopped from alleging that it was issued without value, or because of fraudulent representation. The plaintiff, having taken it in good faith for value, after the representations made, has an undoubted right to enforce it.” 1
Mr. Justice Follett dissented upon the ground that the representations were not sufficient to estop the defendants from alleging that the letter had been obtained by fraud, or was without consideration, but were merely representations that the letter was genuine, and available according to its "terms. As before stated, upon the former trial the complaint was dismissed upon the ground that no cause of action was alleged, and all that was decided was that, if the plaintiff actually parted with value, relying upon the representations made by the defendants that a draft drawn by the plaintiff under the letter of credit upon Munroe & Co. would be paid, the defendants are then estopped from denying the validity of that agreement. The evidence of just what value the plaintiff parted with was not before the court, and upon this trial, under the decision of the general term, it must be made to appear that the value parted with was such as would entitle the plaintiff to claim an estoppel according to the rules governing that subject. We have now before us the evidence upon which the plaintiff relies to establish this estoppel, and it is necessary for us now to determine whether that evidence is sufficient. The contract in question was made between the defendants and Boe. Plaintiff had no knowledge of the contract when made, and at the time the contract was made it does not appear that Boe was indebted to the plaintiff in any sum of money. It appears that Boe had chartered the steamship Raylton Dixon; that the steamship arrived in New York in the month of February, 1892; that Boe did not carry out *981 his charter, and that the plaintiff was. obliged to recharter his ship; that there was a loss to the steamship on recharter of between thirty-three and thirty-five hundred dollars, and that Boe & Co. were responsible for such loss. The charter was not introduced in evidence, nor was there any evidence as to when the recharter was made, or when the liability of Boe & Co. to the plaintiff arose. On the 26th of February, 1892, the letter of credit in question was issued by the defendants. That letter was obtained by Boe upon an agreement between himself and the defendants; and thereby the defendants agreed that Munroe & Co., of Paris, would accept and pay a draft drawn by the plaintiff for 15,000 francs, or £600, at 90 days’ date. The contract is, in substance, an agreement made between Boe and the defendants for the benefit of a third party (the plaintiff). The drafts were not to be drawn upon the defendants, but upon the house of Munroe & Co., in Paris. And the liability of the defendants arose from a breach of the agreement that the Paris house would accept and pay the drafts drawn by plaintiff. It ivas thus an agreement in favor of a third party, between whom and the defendants no contractual relations existed, and from whom no consideration had been received to uphold the contract.
This court has lately decided in the case of Buchanan v. Tilden (Sup.), 39 N. Y. Supp. 228, that such an obligation could not be enforced by the third party, in whose favor the contract was made, unless there existed at the time the agreement was made some obligation on behalf of the person making the contract to the third party. So that it is clear that no obligation ■ in favor of the plaintiff as against the defendants would exist, unless either by a legal or equitable assigment from Boe to plaintiff a legal' right that Boe had to enforce this obligation against the defendants was transferred to the plaintiff, or that defendants were estopped from impeaching the validity of the contract.
The difference between a general guaranty and a special guaranty was considered in the case of Bank v. Kaufmann, 93 FT. Y. 276. There a special guaranty is defined as one which will operate in favor of the particular persons only to whom it is addressed, while general guaranties are open for acceptance by the public generally. And this contract is evidently one that, as between the plaintiff and defendants, would come Avithin the definition of a special guaranty. By the earlier cases it Avas held that no action would lie at the suit of an assignee upon a special guaranty because no privity existed betAveen such assignee and the guarantor. But the court in that case held that this obstacle Avas removed in this state by the Code of Procedure, AAdiich authorized any party acquiring an interest in a guaranty to bring his action and recover thereon, proAÚded a cause of action previously existed upon the contract in favor of his assignor, the court saying:
“ The real party in interest in such contracts is now entitled *982 to maintain, an action for damages arising from a breach of such contract in his own name, although he was not originally privy to it. In other words, the same effect is now given to an equitable that formerly pertained to a legal assignment, and they are now both equally cognizable in a court of law.”
It seems to follow, from this that the plaintiff’s right to recover must depend upon his being the equitable or legal assignee of a right that Boe had to recover from this defendant; and, as was stated in Bank v. Kaufmann, supra:
“ Such a guaranty contemplates a trust in the person of the promisee, and from 'its very nature is not assignable until a right of action has arisen tliereon, which may, like any other cause of action arising upon contract, be then assigned.”
A surety under such a contract “is entitled to the application of the strict rule of construction, and cannot be held beyond the precise terms of his contract.” Now, it is entirely clear that in this case there did not exist, and never existed, as between the defendants and Boe, any right of action in favor of Boe which he could enforce, or which he could assign. He had paid nothing to the defendants, but had obtained this letter upon representations as to its' use which, as between him and the defendants, made the contract void, or voidable at the election of the defendants. They had at any time a right to cancel the letter of credit before it had been acted upon by some third party under such circumstances as would operate to estop the defendants from exercising that right: and up to the time of the attempted transfer, Boe being in possession of the instrument, no right of action existed as between Boe and the defendants which could be transferred or enforced. The transfer of the instrument, therefore, to plaintiff, transferred no cause of action by either a legal or equitable assignment. This principle was fully recognized in the decision of the general term, before cited, on the former appeal. It was there held that, if any liability existed, it must be because the defendants were in some way estopped from alleging that the credit itself was void, or from canceling the credit as it existed. And what was said in Bank v. Kaufmann, supra, applies expressly in this case:
“ It cannot be seriously claimed that a proposition, either written or oral, made by one person to another, agreeing to guaranty the payment' of any draft wrhick the other might draw, furnished a sufficient consideration for the promise. * * * In all of the cases cited where guarantors have been held liable, even to third persons, upon such instruments, the letter embraces either an express or implied request to such persons to advance value upon the faith of the paper therein described; and it is because they have parted with value upon such requests that the liability of the promisor to them is predicated. If no liability is incurred in favor of a third party unless he has parted with value, much less can it be claimed that it is in favor of an original party to the contract, from whom, *983 as is shown affirmatively, no consideration whatever proceeded.”
A different question would be presented if plaintiff had sold a draft drawn under the credit of a person who had purchased it relying on the terms of the credit, and such purchaser had sued for. a failure to pay that draft. It seems to me clear that no estoppel did arise, because the position of the plaintiff was not materially changed after the representations made by the defendants to him, and before notice was given that the credit had been improperly obtained, and was canceled. “ Before a party can be estopped by what he has said from asserting the truth, it must appear that the person claiming the estoppel had acted or rested upon his statements, so that he will suffer harm if they are not conclusively held to be true.” Winegar v. Fowler, 82 N. Y. 316. And in 7 Am. & Eng. Enc. Law, 17, it is said that one of the essential elements to establish an estoppel is that, “ The other party must have been induced to act upon the representation or concealment. His action must have been of a character to result in substantial prejudice were he not permitted to rely on the estoppel.”
But I do not think that the transfer to plaintiff was such as to constitute him a holder for value, within the rule applicable to negotiable paper. The mere receipt of a note in nominal payment of a precedent debt without evidence that it was received in absolute discharge and satisfaction beyond what may be inferred from accepting or receipting it in payment is not •sufficient. Insurance Co. v. Church, 81 N. Y. 218. But what Avould constitute a sufficient consideration on the transfer of a promissory note, or other negotiable instrument, to make the transferee a bona fide holder for value, might be clearly insufficient to create an estoppel. It is necessary for the party relying upon the estoppel to go further and show that in some way his position has been changed to his injury, relying upon the statements made. In other Avords, to create an estoppel, there must be such a change of position on the part of the party claiming the estoppel as will make it inequitable to al- . low the party making the representations to insist upon his legal rights, or shoAV that the representations made were not, in fact, true. In this case it seems to me clear that the plaintiff’s position was not in any Avav changed in consequence of his reliance upon what the defendant Munroe said. About two hours after the intervieAV relied on to create the estoppel, the defendants notified the plaintiff that they had canceled the letter of credit, it having been used for a purpose different from that Avhich the agreement between Boe and the defendants provided that it should be. Boe’s position was not changed during that time in the slightest. He Avas as responsible, so far as appears, after the notice of the cancellation Avas given as before. FTothing had happened that would preArent this plaintiff from pursuing all the remedies against Boe that lie had prior to the giAÚng of the receipt. Plaintiff had sim *984 ply given Boe a receipt in full upon the delivery of this letter of credit, which, within a few hours after its receipt, he had been informed had been fraudulently misapplied for a purpose other than those for which it was issued, and had been canceled. Such a payment was conditioned only, and the right, of the creditor to proceed upon the original indebtedness is unimpaired. Insurance Co. v. Church, supra. It seems to me, therefore, that plaintiff had parted with nothing upon the faith of the represensations made by the defendants, and was. not entitled to insist as against the defendants that they were estopped from alleging that they had been defrauded by Boe, and that the letters of credit given to him had been misapplied. It is clear that the rules applicable to negotiable instruments do not apply to this letter of credit. At most, it was merely a contract between the defendants and Boe that their correspondent in Paris would accept a bill of exchange drawn on them by plaintiff. They issued no négotiable instrument, and gave to neither plaintiff nor Boe a promise to pay. What they did agree to was that Munroe & Co., of Paris,, would accept and pay drafts drawn by plaintiff to an amount equal to £600. That contract allowed or required the application of no different rules than in the case of any other mercantile contract whereby one party agrees that another will pay a sum of money or will be liable for the damages sustained by a, breach of his contract that a third party will pay a sum of money. But, to constitute such a contract, a consideration is necessary, and such a contract is always void as between the parties, if induced by fraud, or where there is a misapplication, in violation of the agreement under which such contract was made. To say that a transfer to a creditor of such a contract by the party obtaining it by fraud, who gives a mere receipt stating that the transfer was accepted in payment of the debt, places any of the parties in such a different position as to create an estoppel, appears to me to be extending the rules applicable only to negotiable instruments to ordinary contracts, and changing in a most material manner the rules upon which the enforcement of contracts is based. It seems to have been conceded by all the judges before whom this case has been that, but for this estoppel, the plaintiff would not have been entitled to recover; and, in my view of the case, the facts did not justify the finding that the defendants were estopped.
The judgment should therefore be reversed, and a new trial ordered, with costs to, the appellant to abide the event.