The judgment appealed from must be affirmed, with costs.

RUMSEY, O'BRIEN, INGRAHAM and PARKER, JJ., concurred.

Judgment affirmed, with costs.

THE PEOPLE OF THE STATE OF NEW YORK v. THE COMMERCIAL ALLIANCE LIFE INSURANCE COMPANY.

In the Matter of the Claim of R. STUART MILLER, General Guardian of the Estates of HELEN MILLER and MARION M. MILLER under Policies Issued to THOMAS MILLER, Appellant, against WILLIAM T. GILBERT, Receiver of THE COMMERCIAL ALLIANCE LIFE INSURANCE COMPANY, Respondent.

*The status of policyholders in an insolvent life insurance company is to be determined as of the date at which proceedings are begun for its dissolution.*

The status of policy-holding claimants against an insolvent life insurance company is to be determined as of the date of its insolvency as fixed by the initiation of proceedings for its dissolution, and consequently a beneficiary cannot enlarge her demand, as it then existed, by presenting a death claim based upon the death of the insured occurring after the period for which premiums have been paid and after a final judgment has been entered dissolving the corporation and appointing a permanent receiver.

APPEAL by R. Stuart Miller, as general guardian of Helen Miller and Marion M. Miller, from so much of an order of the Supreme

Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 17th day of February, 1897, as overrules the exceptions filed by said claimant to the report of the referee and as confirms said report.

Thomas Miller was insured in the Commercial Alliance Life Insurance Company under two policies for $5,000 each, known as "yearly renewable term policies," on which the premiums were payable bi-monthly. The two policies were issued on July 25, 1890, one in favor of Marion M. Miller, a daughter of the insured, and the other in favor of Helen Miller, also a daughter. The premiums on the policies were paid from time to time, the last on October 1, 1894, being the premiums due on that day for two months in advance. On October 13, 1894, the said company having become insolvent, this action was begun to procure a judgment dissolving the corporation and for the appointment of a receiver. An order was subsequently entered on October 30, 1894, appointing a temporary receiver. On January 10, 1895, final judgment was entered dissolving the corporation and appointing a permanent receiver. Thereafter, and on January 15, 1895, Thomas Miller died.

The claimant insisted before the referee that the value of the Miller policies should be based on the fact of the death of the insured, although the death occurred after the period for which premiums had been paid and after the final dissolution of the corporation. The referee refused to compute the claim on this basis, and found that "no rights could be subsequently acquired by any creditor of said company that would entitle him to a larger proportion of the assets of the company than he was entitled to at said date, and that, as a consequence, no claim based upon a death occurring after said date is valid as against said company or its assets. That the claims so made herein under said policies for losses alleged to have accrued thereunder respectively, by reason of the death of said Thomas Miller, are invalid and should not be allowed. That the rights and interests of the holders of said policies respectively, on the 13th day of October, 1894, consisted solely of an interest in the assets of said company to the extent of the value of said policies respectively at said date. That such value consisted of the value of the unexpired part of the insurance under said policies, arising from

such payment of the premiums thereon respectively on the 1st day of October, 1894."

The claimant filed exceptions to the report, which were overruled at Special Term, and now appeals from that part of the order affecting him.

*Edgar J. Nathan* and *J. Harry Hull*, for the appellant.

*Henry D. Hotchkiss*, for the respondent.

O'BRIEN, J. :

The facts are not in dispute, and the questions of law are clearly presented by the learned referee in his opinion as follows: "*First.* Is a death occurring after the expiration of the period for which the premium has been paid, and after the final dissolution of the corporation, a basis for a valid claim under a policy?" "*Fourth.* As of what date should claims against an insolvent company or its assets be valued and allowed?" In an elaborate and able opinion the referee disposes, not only of these, but of many other conflicting claims, and so far as the rights of the appellant here are affected we will affirm upon that opinion.* Differently stated, the question is,

---

* The following is the opinion referred to :

WILLIAM H. WILLIS, Referee :

This action was commenced on the 13th day of October, 1894, by the granting of an order herein on the application of the Attorney-General, restraining the Commercial Alliance Life Insurance Company from paying out any money until further order of the court, and requiring the said company to show cause why a receiver of the assets of said company should not be appointed and the said company restrained from continuing its business.

On the 30th day of October, 1894, an order was made restraining the said company, its agents and attorneys, from continuing its business or exercising any of its franchises and appointing a temporary receiver of its assets.

On the 10th day of January, 1895, a final judgment was entered dissolving the corporation and appointing a permanent receiver of its assets, with all the powers and duties usual in such cases.

Many claims have been presented to the receiver from time to time, and among them, those now under consideration, which involve certain questions of great importance to him in the administration of his trust.

The following is a statement of the claims in question :

The first are for death losses claimed to have accrued under two policies issued by the company upon the life of one Thomas Miller and payable to his daughters, who present the claims by the guardian of their estates, respectively. These policies are what are known as "yearly renewable term policies," in which the

whether the status of claimants in the case of an insolvent insurance company is to be determined as of the date of insolvency, as fixed by the initiation of proceedings for its dissolution, or when the receiver is appointed or final judgment of dissolution is entered, or whether claims against the company can be increased by the death

premium is increased at the end of every year, the last premium having been paid by said Thomas Miller on the 1st day of October, 1894, for two months in advance. Mr. Miller died on the 15th day of January, 1895.

The second claim is for a death loss alleged to have accrued under a policy issued by the company upon the life of Randolph B. Martine and payable to the claimant Lucretia A. Martine, his wife. This policy is what is known as a "ten-year renewable term policy," in which the premium is increased at the expiration of each term of ten years, the last premium having been paid by said Randolph B. Martine on the 30th day of September, 1894, for three months in advance. Said Randolph B. Martine died on the 30th day of March, 1895.

The third claim is for a death loss alleged to have accrued under a policy issued by the company upon the life of Samuel B. Taylor, payable to the claimant, Mary Taylor, his wife, and to a child of said Samuel B. Taylor, in equal shares. This policy is also known as a "ten-year renewable term policy," and the last premium thereon was paid by said Samuel B. Taylor on the 30th day of September, 1894, for three months in advance. Mr. Taylor died on the 6th day of December, 1894.

The fourth claim is for a death loss alleged to have accrued under a policy issued by said company upon the life of Lewis O. Longee, payable to Annie A. Longee, his wife, both being residents of the State of North Carolina. This policy is what is known as a "yearly renewable term policy," and the last premium thereon was paid by the said Lewis O. Longee on the 1st day of October, 1894, for two months in advance. Said Annie A. Longee died before her husband, and on the 10th day of November, 1894, the latter also died. Under the laws of the State of North Carolina said Lewis O. Longee succeeded to the personal property of his wife, and on the 14th day of November, 1894, Needham B. Broughton was duly appointed administrator of the estate of said Lewis O. Longee. As such administrator he is now the holder of said policy and makes the present claim thereunder.

The fifth claim is for a distributive share of the assets of said company under a policy issued by it upon the life of one William Siebecker, payable to said "William Siebecker, his executors, administrators or assigns." This policy is what is known as a "yearly renewable term policy," and the last premium thereon was paid by said William Siebecker on the 1st day of October, 1894, for two months in advance. Said William Siebecker is now living and makes the present claim as holder of said policy.

The sixth claim is for a distributive share of the assets of said company under a policy issued by it upon the life of Adam Beecher, payable to Lizzie Beecher, his wife, or to such other person as he, the said Adam Beecher, might "from time to time designate," with the written consent of the company. This policy

of a policyholder, as in this case, subsequent to the final judgment of dissolution.

We shall not attempt to reconcile the cases in the different jurisdictions, nor in our own, because there is undoubted conflict; but the whole trend of the decisions in jurisdictions, outside of our own

is what is known as a "ten-year renewable term policy," and the last premium thereon was paid by said Adam Beecher on the 10th day of October, 1894, for three months in advance. No other beneficiary has been substituted in said policy in place of said Lizzie Beecher, who is now living, but the present claim under said policy is made by her husband, said Adam Beecher, as the owner and holder of the same.

The questions presented by these various claims are as follows:

*First.* Is a death occurring after the expiration of the period for which the premium has been paid, and after the final dissolution of the corporation, a basis for a valid claim under a policy?

*Second.* Is a death occurring after the entry of the order restraining the corporation from any exercise of its franchises and appointing a temporary receiver, but before the final dissolution of the corporation and before the expiration of the period for which the premium has been paid, a basis for a valid claim under a policy?

*Third.* Has a party whose life is insured under a policy a valid claim to the value of the same, although the beneficiary named therein is still living, where the claimant has paid the premium, and holds the policy, and where, also, by the terms of the policy, he has had the right at any time to substitute a new beneficiary?

*Fourth.* As of what date should claims against an insolvent company or its assets be valued and allowed?

In regard to the first two propositions, the decisions in this State have been conflicting.

In the case of *The People* v. *The Security Life Insurance & Annuity Company* (78 N. Y. 114) the following appears in the opinion of the court: "This company was dissolved and a receiver appointed December 14, 1876. Thomas J. Lockwood, holding a life policy upon which the premiums had been paid to March 27, 1877, died March 15th. The appellant Gilliland was appointed his administrator, and served upon the receiver proof of his death May 23, 1877, long before the expiration of the time under the published notice for the presentation of claims. The referee allowed him only the reserve value of his policy at the date of the dissolution of the company, computed in the same way as the values of running policies were computed, disregarding entirely the fact of the subsequent death of the assured. In this I think he erred. The claimant was entitled to be allowed as his damage the value of this policy. There is no statute regulating how such value, as between the receiver and the claimant, shall be determined. The rules by which the referee determined the values of running policies will not in all cases do justice. In some cases they may give a claimant more damage than he has sustained, and in other cases, less. In their

and in England, favors the view that in the case of an insolvent insurance company the status of all claims is to be determined as of the date of the commencement of proceedings which subsequently result in the dissolution of the corporation. In some of the earlier cases in our own courts a different view seems to have been taken.

---

general application, however, they will work out results sufficiently accurate for judicial action. In general, they furnish the only practical basis of computation, and, hence, are sanctioned. But these rules, adopted from the necessity of the case, should not be used where upon facts existing the precise value of a policy may be easily ascertained. Their use is not, then, justified by any necessity or consideration of convenience. Here the whole premium had been paid, and at the time when the claim was presented the precise value of the policy at the time of the dissolution could easily be shown. It was free from uncertainty or speculation. The amount insured was payable ninety days after the proofs of death; and the present value of that sum on the fourteenth day of December was the value of the policy, and that value could be ascertained like the present value of any certain sum of money payable at a definite future day. There can be no embarrassment in allowing the values of such policies to be computed in this way where the death occurs and the proofs of death are furnished at any time before the expiration of the time for presenting claims."

It will be noted that in this decision the value of the policy is estimated as of the date of dissolution, but proof of a subsequent event, namely, the death of the insured, is admitted as determining such value by way of liquidated damages.

In the *Matter of the Attorney-General* v. *Guardian Mutual Life Insurance Company* (82 N. Y. 336) the court uses the following language: "The respondents represent claims upon policies which were running at the date of the appointment of the receiver, and upon which premiums had been paid to some time subsequent to such date. The persons insured by such policies died subsequent to the appointment of the receiver, not only, but subsequent also to the time to which premiums had been paid, and in the latter respect these claims differed from that upon the Lockwood policy in the case of *People* v. *The Security Life Ins. & Ann. Co.* (78 N. Y. 129). It is contended that these claims are not within the principles laid down by us in that case, because of the difference mentioned. We think otherwise. These policies were in full force at the time when the insured persons died.

"The further payments of premiums were excused by the failure of the company, as well as by the express notice of the receiver that he would receive no more premiums. For the purpose of enforcement the policies were just as effectual as if the premiums had been actually paid. These are not, properly speaking, death claims, but claims for damages upon policies running at the appointment of the receiver; and the rules laid down in the case cited furnish an accurate and just basis for the computation of such damages, the only difference between these claims and that upon the Lockwood policy being that here deductions from the sums which would otherwise be allowable should be made for the amounts of premiums unpaid at the time of the deaths."

(*Attorney-General* v. *Guardian Mutual Life Ins. Company*, 82 N. Y. 336.) That case, however, has, in subsequent decisions, been explained and distinguished, and finally, in *Matter of Equitable Reserve Fund Life Assn.* (131 N. Y. 354), the Court of Appeals has brought the rule of law in this jurisdiction in accord with that

It will be observed that this case differs from the preceding in that the death occurred after the expiration of the period for which the premium had been paid; but both situations are treated as substantially the same in effect, and the decisions are the same, excepting that in the latter case deduction is made for premiums unpaid down to the time of death.

In *The Matter of the Attorney-General* v. *The Continental Life Insurance Company* (88 N. Y. 77) it is held that where, after the expiration of the time specified in the published notice for the presentation of claims to a receiver of an insolvent life insurance company, certain policyholders, whose claims had been presented and allowed, died, the court had power to direct a revaluation of such policies, and to allow the full amounts insured thereunder.

In the case of *The People* v. *The Globe Mutual Life Insurance Company* (91 N. Y. 174) a distinction is made between policies of insurance and other contracts of the company, and it is held that, while with regard to the former, there is a breach of contract arising out of the obligation of the company to continue solvent, there is no such obligation, and, consequently, no breach, in respect to the latter. But it is difficult to see why the same rule should not be applied to both classes of contracts, as, assuredly, any duty to continue able to pay and to pay at maturity would be the same towards all creditors alike.

In all these cases, as we have seen, the rights of the policyholder are held to be based upon a breach of contract by the company arising from its insolvency, the damages for which are to be ascertained, not alone by the facts existing and susceptible of proof at the time of the breach, but also by the subsequent death of the insured as relating back and fixing the special value of the policy upon such breach, as liquidated damages. From this principle it would naturally follow that every other policyholder should have the same right to show the special value to him of his policy at the time of such breach, whether arising from ill-health of the insured or from any other cause.

The courts of other States, as well as those of the United States, differ materially, however, upon these questions, with the decisions above cited, and an examination of the recent decision in the *Matter of The Equitable Reserve Fund Life Association* (131 N. Y. 354) renders it apparent that the courts of this State have modified their views and adopted a rule in conformity with that prevailing in other jurisdictions.

In the case of *Burdon* v. *Massachusetts Safety Fund Association* (147 Mass. 360) the court held as follows: "If then, the association stopped business on May 20, 1885, as we infer from the averments of the bill * * * a certificate would not be forfeited by the failure to pay the monthly dues after that date."

In the case of *Fogg* v. *Supreme Lodge of United Order of Golden Lion* (159 Mass. 9) the court held: "The date of the filing of a bill in equity under which a

prevailing in most of the others by deciding that "holders of death claims must also have their status defined as of the date of the commencement of the proceedings.   *   *   *   Those certificate holders who died after that date have no claims upon the death fund, but their representative share in the reserve fund, as already stated."

receiver is appointed is, as a general rule, the date which fixes the rights of all parties." (See, also, *Commonwealth* v. *Massachusetts Ins. Co.*, 119 Mass. 45.)

In *Dean & Son's Appeal* (98 Penn. St. 101) the receivership was that of a fire insurance company, but the language of the court is applicable to all corporations of a similar character.

In the head note to this case, which is remarkable for its sound reasoning and its clear and forcible statement, it is said : "The rights of creditors of an insolvent corporation become fixed by a decree of the court ordering the dissolution thereof.  No rights can be subsequently acquired by a creditor which will entitle him to a larger participation in the assets of such insolvent corporation." ·

In the opinion delivered by Judge PAXSON in this case it is said: "The corporation is dead for every purpose, and but one thing remains, and that is to distribute its assets among its creditors.   *   *   *

"Who are the creditors entitled to participate in the distribution ?  Clearly those who were such at the time of the dissolution of the corporation.   *   *   *  The distribution of the assets was an immediate duty on the part of the receiver ; its delay is due merely to the fact that time is necessary to realize them.  If, therefore, distribution had been practicable immediately after the appointment of the receiver, the appellants would have received only a dividend upon the premium they had paid.  Does the fact that the distribution was necessarily delayed change the rights of the parties and introduce a new class of creditors who were not creditors at the time of the dissolution ?  We find neither reason nor authority for such a proposition.   *   *   *

"The object of this proceeding is a prompt distribution of the assets.  The principle contended for by the appellants would, if successful, make this impossible, or, at least, intolerably inconvenient. · If the rights of creditors are not fixed as of the date of the dissolution, when do they become fixed?  If we take the distribution as the period, then the appellants would obtain an advantage over other policyholders who might sustain a loss the day after.  The former would be paid, while the latter would get nothing.  Such a rule could not be enforced without producing injustice, and we would be driven to delay distribution until all the policies had expired."

This argument seems quite unanswerable.

Again, in *Commonwealth ex rel. Atty.-Gen.* v. *American Life Insurance Company* (162 Penn. St. 586) the court held: "Where life policies have matured by the death of the assured after the date of the decree of the dissolution of the company, the beneficiaries are not entitled to a dividend on the face value of their policies, but only on the net value calculated as of the date of the dissolution."

The case of *Ingersoll* v. *Missouri Valley Life Insurance Co.* (37 Fed. Rep. 530) was an application in equity by a policyholder to enforce a termination of the

There is a distinction to be noticed in the difference between the policies involved in the two cases to which we have referred, but that in no way changes the principle which should be applied. As held in *Dean & Son's Appeal* (98 Penn. St. 101) "the rights of creditors of an insolvent corporation become fixed by a decree of the

contract and the payment to him of its present value, on the ground that the company was not a "going concern." Judge BREWER, in his decision, made use of the following language: "It is, I think, one of the settled propositions of law that, when an insurance company becomes insolvent and its assets are taken possession of by the court for distribution among its creditors, that policies not yet matured will be adjusted at their surrender value, and to that amount established as present obligations against the company."

In the case of *The New York Life Insurance Co. v. Statham* (93 U. S. 24) the court said: "The annual premiums are not the consideration of assurance for the year in which they are severally paid, for they are equal in amount; whereas, the risk in the early years of life is much less than in the later. It is common knowledge that the annual premiums increase with the age of the person applying for insurance. According to approved tables, a person becoming insured at twenty-five is charged about twenty dollars annual premium on a policy of one thousand dollars, whilst a person at forty-five is charged about thirty-eight dollars. It is evident, therefore, that, when the younger person arrives at forty-five, his policy has become, by reason of his previous payments, of considerable value. Instead of having to pay for the balance of his life thirty-eight dollars per annum, as he would if he took out a new policy on which nothing had been paid, he has only to pay twenty dollars. The difference (eighteen dollars per annum during his life) is called the equitable value of his policy. The present value of the assurance on his life exceeds by this amount what he has yet to pay. Indeed, the company, if well managed, has laid aside and invested a reserve fund equal to this equitable value to be appropriated to the payment of his policy when it falls due. This reserve fund has grown out of the premiums already paid. It belongs, in one sense, to the insured who has paid them, somewhat as a deposit in savings bank is said to belong to the person who made the deposit. Indeed, some life insurance companies have a standing regulation by which they agree to pay to any person insured the equitable value of his policy whenever he wishes it; in other words, it is due on demand. But whether thus demandable or not, the policy has a real value corresponding to it — a value on which the holder often realizes money by borrowing. The careful capitalist does not fail to see that the present value of the amount assured exceeds the present value of the annuity or annual premium yet to be paid by the assured party. The present value of the amount assured is exactly represented by the annuity which would have to be paid on a new policy; or, thirty-eight dollars per annum in the case supposed, where the party is forty-five years old; whilst the present value of the premiums yet to be paid on a policy taken by the same person at twenty-five is but little more than half that amount. To forfeit this excess, which fairly belongs to the assured, and is fairly due from the company,

court ordering the dissolution thereof.   No rights can be subsequently acquired by a creditor which will entitle him to a larger participation in the assets of such insolvent corporation."   And in the course of the opinion therein it is said : " The corporation is dead for every purpose. But one duty remains, and that is to distribute its assets among its

---

and which the latter actually has in its coffers, and to do this for a cause beyond individual control, would be rank injustice.   It would be taking away from the assured that which had already become substantially his property.   It would be contrary to the maxim that no one should be made rich by making another poor."

In the case of *Carr* v. *Hamilton* (129 U. S. 252) we find the following language: " By that act [insolvency and going into liquidation] the company becomes *civiliter mortuus,* its business is brought to an absolute end, and the policyholders become creditors to an amount equal to the equitable value of their respective policies, and entitled to participate *pro rata* in its assets.   If any one is indebted to the company, especially if his debt was contracted with reference to, and because of, his holding a policy, there would seem to be strong reason for allowing him a set-off, and no good reason to the contrary.

" One objection raised against the allowance of set-off or compensation in the present case is that when the life association became insolvent, and when the present suit was commenced, the insurance had not become absolute in Hamilton, and did not become so until July 14, 1884, previous to which time his children had a contingent interest therein, they being the beneficiaries in case he should die before that date.   But this reason cannot be sound, for a settlement of the company's affairs cannot be postponed to await the determination of every contingency on which its policy engagements are suspended.   This would postpone a settlement for at least half a century.   Every person's interest in life insurance is capable of instant and present valuation, almost as certain and determinate as the discount of a note or bill payable in the future.   Tables of mortality and of all values dependent thereon are adopted by every company, and furnish an assured basis of computation for this purpose."

In Morawetz on Private Corporations (2d ed., vol. 2, § 806, note) the author says: " Upon the dissolution of an insolvent corporation the rights of its creditors become fixed.   The holder of a policy of insurance issued by a corporation is entitled only to the value of the policy at the time of the dissolution, although the loss insured against happened shortly afterwards."

In *The Matter of the Equitable Reserve Fund Life Association* (131 N. Y. 354) Judge PECKHAM, in writing the opinion of the court, used the following language: " *Fourth.* The date upon which to determine the rights of claimants upon the reserve fund should be the date of the commencement of the proceedings which terminated in the dissolution of the company.

" In *Attorney-General* v. *North Am. Life Ins. Co.* (82 N. Y. 172, at 186) it was held that the date of the appointment of the receiver under the act of 1869

creditors. \* \* \* Who are the creditors entitled to participate in the distribution? Clearly those who were such at the time of the dissolution of the corporation. \* \* \* The distribution of the assets was an immediate duty on the part of the receiver; its delay is due merely to the fact that time is necessary to realize them. If,

---

was the proper one at which to value all claims against the company, although it was not in fact dissolved until another application at a later date and under a different act. The court said the company was practically, although not technically, dissolved upon the first appointment of the receiver. There was, under the act of 1869, a method by which the company should continue in a certain way to do business if the referee appointed under that act should so report, but the company did not continue, and, therefore, the date named was adjudged the proper one. In this case the proceeding had for its end the dissolution of the company. We hold that, after the commencement of the proceedings, no assessments need be levied or paid, and, if the proceedings terminate in dissolution, the status of the claimants at the commencement of the proceedings is the proper one upon which to base the distribution. If not dissolved other considerations obtain, which the court, in such case, would give the proper weight to.

"If the company be dissolved, and the date of its dissolution be taken as the proper time to adjudge the status of claimants, it seems to us great injustice is perpetrated. By failing to pay assessments otherwise falling due subsequent to the commencement of the proceedings to obtain a dissolution (which failure we hold to be proper), the death fund is not in the least augmented over its amount at the time of such commencement, while the number of persons who can claim to share therein is increased by each death up to the time of dissolution, and no assessment is made to pay it. The party thus dying loses all right in the reserve fund, while the death fund is not increased by the levy of any assessment to pay the death loss, and the dividend to each holder of a death claim is made constantly smaller by the death of each certificate holder. The certificate holder, on the contrary, who lives until the date of distribution, has been constantly having his share in the reserve fund increased by the death of any holder before such dissolution, and he has been and is called upon to pay no assessment towards the liquidation of the death loss from the death fund. Injustice each way is the result. In holding that the assessments may be withheld subsequent to the commencement of legal proceedings and pending their continuance, the date of the commencement of such proceedings is the equitable one upon which to define the status of claimants resulting from a decree dissolving the corporation. The certificate holders at the time of the commencement of the proceedings must share in the reserve fund, and if any have died since that date their representatives are entitled to the share which would have come to them if living.

"*Fifth.* The holders of death claims must also have their status defined as of the date of the commencement of the proceedings, which date is the same, I believe, as the appointment of the temporary receiver. Those certificate holders who died after that date have no claims upon the death fund, but their representatives share in the reserve fund as already stated."

therefore, distribution had been practicable immediately after the appointment of the receiver, the appellants would have received only a dividend upon the premium they had paid. Does the fact that the distribution was necessarily delayed, change the rights of the parties and introduce a new class of creditors who were not

Here it is distinctly held that where a certificate holder dies after the commencement of the proceedings culminating in dissolution, his representatives have no valid claim for a death loss, but only to a share in the reserve to the extent of the value of the certificate at such date. The corporation concerned in this case was an assessment association, but the principle involved applies equally to all life insurance companies.

The views thus expressed by Judge Peckham are clearly at variance with the earlier decisions in this State, and conform to the rule recognized elsewhere, namely, that the rights of policyholders become absolutely fixed upon the insolvency of the company, and that thereafter it is impossible to enlarge such rights or to acquire new ones.

This rule seems to be entirely logical and sound, and the only one under which an equitable distribution of the assets can be made.

Under its policy of life insurance the company has rights as well as duties. The obligations are mutual as between the company and its policyholders, and the liability of the former for death losses, as well as its ability to meet them, is based upon the payment by the latter of the premiums on their policies. To provide funds wherewith to meet its maturing obligations the company must be in the continued receipt of such premiums calculated in accordance with certain established tables. Where such receipts are cut off by insolvency no further provision can be made for such maturing obligations, and the business must necessarily come immediately to an end.

As the result of the calculations upon which its business is based, the company must accumulate from the premiums a certain gradually increasing amount to meet its increasing liability under its policies, arising from the advancing age of the insured and the greater imminence of death. This accumulated amount is known as the "reserve fund" of the company, and failure to create the same is itself evidence of insolvency.

Such general reserve fund is the aggregate of the several accumulations from the premiums of the various policies respectively, and each policyholder has a certain definite and fixed interest in the fund, the amount of which does not vary with the state of his health, or with his condition in any respect. Such amount constitutes the "reserve" required for the exclusive protection and benefit of the policy. The company is chargeable at all times with the possession of such accumulation from the premiums of each policy, and upon its insolvency and a distribution of its assets the holder of each policy is entitled to a corresponding proportion of the general reserve fund without reference to the claims of others. The right attaches to the policy and constitutes its value, and it is in no way dependent upon or measured by the value of the life of the insured. Each policy stands by itself in the matter, and upon the insolvency of the company

creditors at the time of the dissolution? We find neither reason nor authority for such a proposition. \* \* \* The object of this proceeding is a prompt distribution of the assets. The principle contended for by the appellants would, if successful, make this impossible, or at least intolerably inconvenient. If the rights of

---

the right to such definite proportion of the general reserve fund vests absolutely in the holder of each policy. Any payment, therefore, upon a policy of an amount exceeding its own reserve, can only be made from the reserve of others.

It may be remarked here that the rights of policyholders upon the insolvency of a company are not properly based upon any theory of "damages," as there is no breach of contract in any proper sense of the word. See Morawetz on Private Corporations (2d ed., vol. 2, § 806); *Mumma* v. *Potomac Co.* (8 Pet. 286); and also *People* v. *Globe Mutual Life Ins. Co.* (91 N. Y. 174), in which the court said: "So that from the necessity of the case, as there was no breach on either side before the injunction, so there could be none after. What had happened was a dissolution of the contract by the sovereign power of the State, rendering performance on either side impossible. And this result was within the contemplation of the parties, and must be deemed an unexpressed condition of their agreement. One party was a corporation. It drew its vitality from the grant of the State, and could only live by its permission. It existed within certain defined limitations, and must die whenever its creator so willed."

Moreover, unliquidated claims of such nature can only be enforced against a going concern. (*Matter of Adams*, 15 Abb. N. C. 61.) In the present proceeding it is simply a question of a just and equitable distribution of certain assets, as a trust fund among those entitled to share therein. (2 Waterm. Corp. 936, and cases cited; *Hastings* v. *Drew*, 76 N. Y. 9.)

It may be further remarked that, if claims based upon or measured by subsequent deaths were admissible, how could such privilege logically cease short of the death of the last policyholder? Why should a distinction be made in favor of those dying within a certain arbitrary period, at the expense of those so unfortunate as to continue living? As a matter of fact, the correct rule upon this general question would seem to be that in every case of an insolvent estate, whether corporate or otherwise, the rights of all creditors should be limited to amounts then liquidated and ascertained, for the reason, if no other, that to discriminate among claims subsequently maturing by fixing a limit of time for the same, is illogical and unjust, and that without such limitation the settlement of the estate might be indefinitely postponed.

Upon the insolvency and dissolution of a corporation such as that now under consideration, a question arises as to the exact date at which the rights of creditors become fixed and vested. In the authorities above cited such date is variously and somewhat loosely referred to as the time of the insolvency of the company, or of the appointment of the receiver, or of the dissolution, or of the distribution of assets. The true date seems, however, to be the commencement of the proceedings culminating in the dissolution, which, in the present instance, was the 13th day of October, 1894, when the order to show cause was granted and

creditors are not fixed as of the date of the dissolution, when do they become fixed? If we take the distribution as the period, then the appellants would obtain an advantage over other policyholders who might sustain a loss the day after. The former would be paid, while the latter would get nothing. Such a rule could not be

issued. The complaint alleged the insolvency of the company at that date, and the subsequent adjudication of insolvency related back and established the existence of such condition from the outset.

After that date none of its regular business could be lawfully transacted by the company, and no defaults could be taken for failure of policyholders to pay premiums.

The business in question, as we have seen, was reciprocal in character, the discharge of the company's obligations being wholly dependent upon a like discharge of the duty of the insured, which, of course, was that of making regular payments of premiums. Inasmuch as, after the insolvency, no premiums could be lawfully collected by the company, or defaults taken for failure to pay the same, the ability of the company to make provision for death losses necessarily ceased, and the power to continue business as a going concern no longer existed. Thereafter no new rights could be acquired by the company against its policyholders, and none by the latter against the company. This view of the matter is sustained by numerous authorities in this State and elsewhere.

In the case of *Fogg* v. *Supreme Lodge of United Order of Golden Lion* (*supra*) the court held: "The date of the filing of a bill in equity under which a receiver is appointed is, as a general rule, the date which fixes the rights of all parties."

In *The Matter of the Attorney-General* v. *North American Life Ins. Co.* (82 N. Y. 172) we find the following: "The receiver in this case was appointed March 8, 1877, under the act of 1869. That act contained no provision for a dissolution of the corporation, and hence there was a further application to the court by the Attorney-General in December, 1877, under the act of 1853, for an order dissolving the corporation; and upon such application an order was made January 16, 1878, continuing the receiver and dissolving the corporation. The referee, in allowing the claims, took the date of March 8th as the time in reference to which the value of all claims should be computed. It is claimed that he should have taken the date of January 16th. I think the referee was right. The business of this company was arrested on March 8th, and its assets were then put into the hands of a receiver for administration, under the act of 1869. The company could never thereafter do any business, and was practically, though not technically, dissolved."

Here, we see, the date is fixed as of the appointment of the receiver, but there is nothing to indicate any earlier proceeding in the matter.

In *People* v. *Globe Mutual Life Insurance Co.* (*supra*) we find the following: "We held in the *Security* case that the latter were creditors and stood upon a breach of their contract; but that breach was not the dissolution of the company. It antedated such dissolution and was the prior cause, of which the latter was the consequence. The reserve required by law was essential to the safety of the

enforced without producing injustice, and we would be driven to delay distribution until all the policies had expired."

Although the reasoning above quoted had reference to a fire insurance company, it is equally forcible and cogent and applicable to an insolvent insurance company of whatever kind; for, in the absence

policyholders. A covenant to maintain it was implied in every contract of insurance. That covenant the company broke by its own neglect, for which it alone was assumed to be responsible. The State found these contracts broken and for that reason interfered, and when its decree of dissolution came it had to deal with broken contracts and treated them as it found them."

In the case of *Ingersoll* v. *Mo. Valley Life Ins. Co. (supra)* the court said: "As my conclusions are in favor of the equities of the complainants, it follows that their failures to pay premiums since the filing of this bill have worked no forfeiture."

In the case of *Clark* v. *Brockway* (1 Abb. Ct. App. Dec. 351) the following statement appears in the syllabus: "The rule that the title of a receiver dates only from the filing of the order of his appointment does not apply to a chose in action. The filing of a bill to set aside the debtor's assignment, if followed by the appointment of a receiver and a decree granting the relief asked for, creates a lien on all the choses in action held by the assignee which is not liable to be defeated by a cross-judgment recovered by the debtor in such chose in action against the assignor." (See, also, *Atlas Bank* v. *Nahant Bank*, 23 Pick. 480; *Commonwealth ex rel. Atty.-Gen.* v. *Ins. Co.*, 162 Penn. St. 586; *Mayer* v. *Atty.-Gen.*, 32 N. J. Eq. 815; *Fawcett* v. *Supreme Sitting, etc.*, [Conn.] 24 Law Rep. Ann. 815; *Taylor* v. *North Star Mutual Ins. Co.*, [Minn.] 20 Ins. Law J. 562.)

Finally, the question was decided in this State in *The Matter of Equitable Reserve Fund Life Association (supra)*, where Judge PECKHAM, in his opinion hereinabove quoted, says: "The holders of death claims must also have their status defined as of the date of the commencement of the proceedings, which date is the same, I believe, as the appointment of the temporary receiver. Those certificate holders who died after that date have no claim upon the death fund, but their representatives share in the reserve fund as already stated."

In respect to the ownership of running policies in force at the time of the failure of a company, the law seems to be in a state of considerable confusion. In *Whitehead* v. *N. Y. Life Ins. Co.* (102 N. Y. 143) it was held that a husband, in taking out a policy upon his own life, payable to his wife or children, acts as their agent, and cannot thereafter surrender the policy, or in any way deprive his principals of their vested rights therein. It is difficult, however, to find that the courts have ever broadly and logically defined the relations existing between the insured and the beneficiary under a life policy, and it may almost be said that no two decisions agree in the matter. It seems to be settled, however, that the beneficiary named in an ordinary policy has vested rights thereunder, even when the insured pays the premium and retains the policy, though this rule is apparently in conflict with that laid down in the recent case of *Buchanan* v. *Tilden* (5

of special clauses or conditions in special policies, the rule which finds most support in reason and authority is the one which holds that, as to insolvent corporations, the rights of creditors should be determined as of the date when insolvency proceedings are commenced, which result in a final judgment of dissolution; because it is upon that date that the company loses its life and ability to exercise its functions, and is prevented from increasing its assets by the receipt of premiums, or decreasing them by the payment of claims, and its property is placed within the jurisdiction of the court for distribution, and all that remains is to collect and realize on such property with a view to its fair and just distribution among its creditors.

Our conclusion is that the exceptions should be overruled and the judgment affirmed, with costs.

PATTERSON, WILLIAMS, INGRAHAM and PARKER, JJ., concurred.

Exceptions overruled and judgment affirmed, with costs.

---

App. Div. 354), where an analogous contract for the benefit of a third person was declared invalid for want of consideration.

Although there is much uncertainty and difference of opinion in regard to any theory of law upon which the rights of the parties in question are based, the weight of authority, as found in the leading decisions and text books upon the subject, establishes the existence of the following general rules:

1. Where the policy is payable to the insured or his legal representatives, he is himself the absolute owner of the policy and entitled to all benefits and proceeds thereof.

2. Where the policy is payable to a beneficiary other than the insured, but by the terms of the policy itself the insured may surrender the same, or may at any time substitute another beneficiary, and the insured retains possession of the policy, he is entitled to all benefits and proceeds thereof down to the time of his death.

3. The possession, however, of such policy by the beneficiary named therein, or his assigns, raises a presumption of a previous delivery of the same to him, such as to vest him or his assigns with the right to any benefits or proceeds thereof upon the failure of the company.

4. In all other cases, the beneficiary named in the policy, or his assign, if living, is entitled to receive all the benefits and proceeds of the policy.